# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GARRETT DEVELOPMENT, L.L.C., an Oklahoma limited liability company, | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. CIV-18-298-D |
| DEER CREEK WATER CORPORATION, an Oklahoma not for profit corporation, | ) ) ) ) | |
| *Defendant.* | ) | |

# O R D E R

Before the Court are cross-motions for summary judgment filed by Defendant Deer Creek Water Corporation ("Deer Creek") [Doc. No. 52] and Plaintiff Garrett Development, L.L.C. ("Garrett") [Doc. No. 53]. Both motions are fully briefed and at issue. *See* Pl.'s Resp. Br. [Doc. No. 58]; Def.'s Reply Br. [Doc. No. 62]. *See also* Def.'s Resp. Br. [Doc. No. 57]; Pl.'s Reply Br. [Doc. No. 64].

## BACKGROUND

This case is about providing water to a proposed residential development. Garrett owns land in the NW/4 of Section 19-T14N-R3W, Oklahoma County, Oklahoma. Garrett plans to develop a residential housing addition called the Covell Creek Addition ("Addition") on this property. Garrett must secure a water source for the Addition to obtain final approval and rezone the plat to sell individual residential lots.

In 2015, Garrett submitted an application for water service to Deer Creek, and Deer

Creek responded with its terms and conditions. In 2018, Garrett submitted a renewed application for service, and Deer Creek again provided nearly identical terms and conditions. Subsequently, Garrett sought to obtain service from a different provider. Deer Creek claims that it has an exclusive right to provide water to the Addition under the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1926(b).

Garrett filed this lawsuit seeking a declaration that Deer Creek "does not have a service area protected by 7 U.S.C. § 1926(b) and that obtaining water service for the Addition from another water service provider does not violate 7 U.S.C. § 1926(b)." Compl. at ¶ 4. Further, Garrett seeks a declaration "that Deer Creek has failed and refused to make water service available to Garrett such that Garrett is free to obtain water service from a water service provider other than Deer Creek" and that doing so does not violate 7 U.S.C. § 1926(b). Compl. at ¶ 23.

Both parties seek summary judgment. Deer Creek argues that it qualifies for protection from curtailment under 7 U.S.C. § 1926(b), it has made water available to Garrett, and Garrett's claims are not justiciable. Garrett asserts that Deer Creek must make service available to qualify for protection, Deer Creek has not made service available, and Deer Creek's claimed service area violates the Tenth Amendment.

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is

genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.*

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* FED. R. CIV. P. 56(c)(1)(A).

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross motions for summary judgment, the Court is entitled to assume "'no evidence needs to be considered other than that filed by the parties.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

## UNDISPUTED FACTS[1]

Deer Creek is a not-for-profit corporation that was established under OKLA. STAT. tit. 18, § 863, and is governed by the Oklahoma General Corporation Act. *See* Def.'s Mot. [Doc. No. 52] at ¶ 2; Pl.'s Mot. [Doc. No. 53] at ¶ 19. Deer Creek has obtained loans from the United States Department of Agriculture ("USDA"), and it remains indebted to the USDA. Def.'s Mot. at ¶¶ 4–10.

Garrett owns a section of land described as the NW/4 of Section 19-T14N-R3W, Oklahoma County, located at the intersection of May Ave and 206th Street. *Id.* at ¶ 12. The land is currently zoned for agricultural and rural residential uses. *Id.* Garrett intends to build a residential addition on the land. *Id. See also* Pl.'s Mot. at ¶ 2. Garrett contacted Deer Creek about providing water service to the Addition. Pl.'s Mot. at ¶ 3. On two occasions, Garrett submitted an application for service, and Deer Creek accepted both applications. Def.'s Mot. at ¶¶ 29–32. Deer Creek conditioned its approval on certain terms. Def.'s Mot. at ¶ 35; Pl.'s Mot. at ¶ 7. Those terms included expanding infrastructure at Garrett's expense:

    a. Impact fees of $2,500 per lot, but credited to the cost of drilling the four wells in paragraph (d):
    b. Plaintiff must extend certain water mains a total of 3710 linear feet from Deer Creek's existing mains to the Proposed Development;
    c. Plaintiff must transfer water rights to the parcel to Deer Creek;
    d. Plaintiff must provide and drill four successful wells within the Proposed Development (in the February, 2018 Service Letter, the impact fees

---

[1] This statement includes material facts that are supported by the record and not opposed in the manner required by Rule 56(c)(1) and LCvR56.1(d). All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to Rule 56(e)(2) and LCvR56.1(e). Any fact stated by a party that is not supported by the party's citation to the record is disregarded.

would be credited toward these wells);

    e.   Plaintiff must provide 3-phase power into the Proposed Development and to all water well sites;

    f.    Plaintiff must provide and install meter cans, setters, curb stops, corp. stops, and service lines per Deer Creek's specifications;

    g.   Plaintiff must pay a 4% inspection fee of all water system construction; and

    h.   Plaintiff must pay for one membership fee.

Def.'s Mot. at ¶ 35.

Deer Creek provides water service to the parcels to the north, west, and east of Garrett's property. Def.'s Mot. at ¶ 18. Deer Creek has maintained an 8-inch water main on the northern part of Garrett's property since 1972. Def.'s Mot. at ¶ 14; Pl.'s Mot. at ¶ 3. The existing 8-inch main is insufficient to provide water to the Addition. Pl.'s Mot. at ¶ 3. Deer Creek does not plan on providing the necessary infrastructure. Pl.'s Mot. at ¶ 18; Def.'s Mot. at  ¶ 35. Deer Creek has not consented to another provider servicing the Addition. Pl.'s Mot. at ¶ 6.

## DISCUSSION

"Congress enacted 7 U.S.C. § 1926(b) as part of a federal statutory scheme to extend loans and grants to certain associations providing water service to farmers, ranchers, and other rural residents." *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 (10th Cir. 2012). Section 1926(b) prevents other water providers from "encroaching upon services provided by federally indebted water associations." *Id.*

To qualify for a loan under this federal scheme, the recipient must fall under the classifications outlined in § 1926(a). To qualify for protection from curtailment, the recipient must (1) have a continuing indebtedness to the USDA, and (2) have made service

available to the disputed area. *Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 659 F.3d 969, 976 (10th Cir. 2011); *see also Sequoyah Cnty. Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1197 (10th Cir. 1999). "Doubts about whether a water association is entitled to protection from competition under § 1926(b) should be resolved in favor of the [USDA]-indebted party seeking protection for its territory." *Sequoyah*, 191 F.3d at 1197.

## I.    Section 1926(a)

Section 1926(a) identifies the entities that may be accorded § 1926(b) protection. The section authorizes loans "to associations, including corporations not operated for profit . . . for the . . . conservation, development, use, and control of water." 7 U.S.C. § 1926(a). Deer Creek was formed pursuant to OKLA. STAT. tit. 18, § 863 as a private, non-profit corporation, and it is controlled by the provisions of the Oklahoma General Corporation Act. *See* OKLA. STAT. tit. 18, §§ 1001–1144. Deer Creek was formed in part "[t]o provide for the use and benefit of its members a waterworks and distribution system . . ." Def.'s Mot. at ¶ 1. Thus, the plain language of § 1926(a) indicates that Deer Creek is an entity that may be protected.[2]

---

[2] Deer Creek asserts that Garrett lacks standing, seeks an advisory opinion, and its claims are not ripe. These are substantially similar to the arguments raised by Deer Creek at the motion to dismiss stage. *See* Order [Doc. No. 16]. Deer Creek recognizes the Court's previous ruling but renews these arguments because the standard on summary judgment is different and discovery apparently uncovered new facts. Upon review of the arguments, nothing has significantly changed since the Court's previous Order [Doc. No. 16]. Thus, these arguments need not be addressed.

## II.     Section 1926(b)

### a.  Continuing Indebtedness

To be protected from curtailment, the first prong of § 1926(b) requires a continuing indebtedness to the USDA. *Douglas Cnty.*, 659 F.3d at 976; *Sequoyah*, 191 F.3d at 1192. Both parties concede that Deer Creek has been indebted to the USDA since the 1990s. Def.'s Mot. at ¶¶ 4–10; *see also* Pl.'s Mot. at 8 ("Garrett does not contest Deer Creek's indebtedness . . . ."). The remaining narrow inquiry is whether Deer Creek made service available to Garrett. Before turning to that question, the Court addresses the other arguments related to Deer Creek's status.

### 1.  State Approval and the Tenth Amendment

Garrett argues throughout its briefing that Deer Creek does not qualify for protection because it is not a rural water district, and thus, Oklahoma law does not authorize it to borrow money from the USDA. *See* Pl.'s Mot. at 19–22; Pl.'s Reply Br. at 4–6. *See also* Pl.'s Resp. Br. at 9–13. Garrett contends the state must knowingly and voluntarily accept the conditions attached to the federal funds to satisfy the Tenth Amendment. *Id.*

Deer Creek counters that nothing in § 1926(b) requires it to be classified as a rural water district under Oklahoma law. *See* Def.'s Resp. Br. at 13–16; Def.'s Reply Br. at 6. Because it is a private entity, Deer Creek asserts it does not need statutory approval to borrow money from the USDA. *Id.*

 "The Constitution empowers Congress to 'lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citing Art. I, § 8,

cl. 1). Known as the spending power, this allows Congress to "attach conditions on the receipt of federal funds," and it "has repeatedly employed the power 'to further broad policy objectives by conditioning the receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota*, 483 U.S. at 206 (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 474 (1980)).

The spending power is not without limits. *South Dakota*, 483 U.S. at 207 (citing *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, and n.3 (1981)). The power must (1) be exercised in the pursuit of the general welfare; (2) unambiguously establish the conditions so that recipients can knowingly accept or reject; (3) be germane to the federal interest at issue; (4) not violate other provisions of the Constitution; and (5) not be impermissibly coercive. *See South Dakota*, 483 U.S. at 207–08.

Here, Garrett argues there was no knowing acceptance or rejection by the State of Oklahoma regarding government loans to private non-profit entities like Deer Creek. The Supreme Court in *Pennhurst State School and Hospital v. Halderman* stated that legislation enacted under the spending power "is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." 451 U.S. 1, 17 (1981). The legitimacy of this power "rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" (citation omitted). Importantly, the program in *Pennhurst* was a federal-state grant where the government provided funds to the states for the creation of programs for the developmentally disabled. *Id.* at 11. The recipient was a hospital owned by the Commonwealth of Pennsylvania. *Id.* at 5.

Regarding § 1926(b), the Tenth Circuit has held that this section "sets forth both the mechanism for making the loans and the conditions that are to accompany them." *Glenpool Util. Servs. Auth. v. Creek Cnty. Rural Water Dist. No. 2*, 861 F.2d 1211, 1215 (10th Cir. 1988). In passing § 1926(b), "Congress clearly acted within its powers." *Id.* The crux of the analysis, therefore, is whether the state must knowingly and voluntarily accept the terms of the loan between Deer Creek and the USDA. This hinges on a distinction between rural water districts and water associations under Oklahoma law.

Oklahoma law provides for rural water districts under Title 82. These entities are quasi-municipal corporations. *Douglas Cnty.*, 659 F.3d at 976. Quasi-municipal corporations possess only those powers accorded to them by law. *Id.; see also Hous. Auth. of Kaw Tribe of Indians of Okla. v. City of Ponca City*, 952 F.2d 1183, 1192 (10th Cir. 1991) ("Since political subdivisions are creatures of the state, they possess no rights independent of those expressly provided to them by the state."). Oklahoma law expressly allows these districts to borrow money from the federal government. *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 717 (10th Cir. 2004). In choosing to borrow federal funds, the state is "'ultimately free to reject both the conditions and the funding [of federal loans], no matter how hard that choice may be.'" *Douglas Cnty.*, 659 F.3d at 976 (quoting *Pittsburg Cnty.*, 358 F.3d at 718).

Here, however, Deer Creek is a private, non-profit rural water association formed pursuant to the Oklahoma General Corporation Act. Deer Creek is a private entity, not a quasi-municipal body. It is Deer Creek that must knowingly and voluntarily accept the conditions associated with the federal funds—not the state. Under the Oklahoma General

Corporation Act, one of the specific powers accorded to corporations is the ability to borrow money. *See* OKLA. STAT. tit. 18, § 1016 ("Every corporation created pursuant to the provisions of the Oklahoma General Corporation Act shall have the power to . . . 13. Make contracts, . . . incur liabilities, borrow money at such rates of interest as the corporation may determine . . ."). There is no evidence that Deer Creek did not knowingly and voluntarily accept the conditions associated with the federal loan. The Tenth Amendment is not violated by Deer Creek's loan from the USDA.[3]

### 2. *Defined Service Area*

Garrett asserts that Deer Creek must have a defined service area to qualify for protection under § 1926(b). Garrett contends that it should not be left to guess at Deer Creek's service area, and Deer Creek needs some sort of contract, certificate, or arrangement with the state to give it authority to operate in an area. Deer Creek maintains that it does not need a defined service area since it is a private entity. Deer Creek asserts that Garrett is not left to guess at Deer Creek's service area because Deer Creek serves the land to the east, north, and west of Garrett's property. The Court agrees with Deer Creek.

"Federal, not state law, controls the geographic scope of the § 1926 protections, which attach as of the entry into the loan agreement and remain as long as the conditions

---

[3] Garrett argues that the Court could equate Deer Creek's actions to a government taking in violation of the Fifth Amendment because Garrett is improving the property at its expense, and others will benefit from Garrett's improvements. Defendant argues that there can be no taking where there is no government action. The Court agrees with Defendant. The Tenth Circuit rejected a takings argument on other grounds in *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 717–19 (10th Cir. 2004) (holding that a federal loan to a rural water district is nearly the opposite of a taking, even where § 1926(b) protects the district from encroachment by a municipality).

for § 1926 protection . . . are met." *Pittsburg Cnty.*, 358 F.3d at 716 n.6. Protection under § 1926(b) "is limited to . . . the geographical area in which the association provides or makes service available." *Bell Arthur Water Corp. v. Greenville Utilities Comm'n*, 173 F.3d 517, 520 (4th Cir. 1999); *see also Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cnty.*, 401 F.3d 274, 278 (4th Cir. 2005) ("The protection . . . is limited to the area in which the association provides or makes available water service . . . ."). Once § 1926(b) protection attaches, the water association has "*exclusive* water service rights over that property" until the loan is paid off or until the association "fails to make service 'available' to the property in question." *Pittsburg Cnty.*, 358 F.3d at 716 (emphasis in original).

Garrett's argument that Deer Creek needs a defined service area goes back to the distinction between rural water districts and water associations under Oklahoma law. Rural water districts created under Title 82 of the Oklahoma statutes have a defined service area. With rural water districts, the "boundaries . . . are determined at the time the board of county commissioners 'declare[s] the land described in the petition or any part thereof to be incorporated as a district.'" *Rural Water Dist. No. 5 Wagoner Cnty., Okla. v. City of Coweta*, 949 F. Supp. 2d 1091, 1096 (N.D. Okla. 2013) (quoting OKLA. STAT. tit. 82, § 1324.6). There is no such limitation on rural water associations. Nothing in the Oklahoma General Corporation Act requires a private, non-profit water association to have a defined service area.

Furthermore, the Court is only addressing Garrett's property. *See Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Oklahoma v. City of Guthrie*, 654 F.3d 1058, 1065 (10th Cir. 2011) (finding that a customer-by-customer basis was

11

appropriate for determining whether service was made available); *Glenpool Util. Servs. Auth. v. Creek Cnty. Rural Water Dist. No. 2*, 861 F.2d at 1217 (deciding the right to furnish water related only to the parties before the court). Deer Creek has had an 8-inch water main on Garrett's property since 1972. Deer Creek serves the properties to the north, east, and west of Garrett. Garrett is not left guessing as to whether its property falls within the area that Deer Creek may service.

### b. Service Made Available

The second prong of § 1926(b) is whether the water association made service available to the disputed area. *Sequoyah*, 191 F.3d at 1197. The Tenth Circuit relies on the "pipes in the ground" test to make this determination. *Id.* at 1203. The inquiry is "whether the association has proximate and adequate 'pipes in the ground' with which it has served or can serve the disputed customers within a reasonable time." *Id.* A water association can satisfy this test by showing "'that it has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made.'" *Id.* (quoting *Bell Arthur*, 173 F.3d at 526). This inquiry focuses on whether an association "has the capacity to provide water service to a given customer." *Sequoyah*, 191 F.3d at 1203.

Deer Creek asserts it satisfies the test because it "literally has pipes in the ground." Def.'s Mot. at 19. Deer Creek has an 8-inch water main on Garrett's property and has since 1974. Further, Deer Creek states it has the capacity to serve the Addition. William Myers, Deer Creek's expert, included a table in his expert report that summarized the "water rights owned by Deer Creek." Ex. 5, [Doc. No. 53-5] (Myers Report). Myers asserted that the

"current total water rights capacity of the system is 944.97 million gallons per year. The average usage of the system from 2014 to 2018 is 315.4 million gallons per year." *Id.*

Garrett, however, argues that Deer Creek does not have the capacity to serve the Addition because the 8-inch main is inadequate. Garrett relies on an excerpt from Myers's deposition and Deer Creek employee Debbie Well's deposition where both witnesses concede that the existing infrastructure cannot adequately serve the Addition. *See* Ex. 3, [Doc. No. 53-3] (Myers Dep.); *see also* Ex. 1, [Doc. No. 53-1] (Wells Dep.). Garrett contends that the figures cited by Myers are what Deer Creek could theoretically withdraw, not what Deer Creek's existing infrastructure could actually withdraw.

In analyzing the pipes in the ground test, another judge in this district found that a water line that was seven miles away from the addition in question was not adjacent to the land for purposes of making service available. *TP Real Estate LLC v. Rural Water, Sewer & Solid Waste Mgmt. Dist. No. 1, Logan Cnty., Okla.*, No. CIV-09-748-R, 2010 WL 11508774, at *5 (W.D. Okla. Apr. 19, 2010). In addition to the distance, the existing line was incapable of meeting the party's request. *Id.* The existing infrastructure would serve 150 homes, but the request was for 357 homes. *Id.*

Similarly, the 8-inch main on Garrett's property is insufficient to meet Garrett's request for the Addition. Although Myers cites the total water availability, the existing infrastructure is currently incapable of providing that much water. Thus, the analysis shifts to whether Deer Creek could make service available within a reasonable time.

### c. Reasonable Time

Garrett asserts that Deer Creek has no intention of building any of the necessary

13

infrastructure. As part of Deer Creek's conditions of service, Garrett must bear the cost of the infrastructure upgrades to service the Addition. Under this standard, Garrett argues that "no [water] entity would ever fail the test," if it required the applicant to upgrade infrastructure to make service available.

Deer Creek does not dispute that it does not intend to pay for the new infrastructure. In its Reply, Deer Creek cites Oklahoma law that it claims authorizes it to make Garrett bear the cost of the development [Doc. No. 62] at 7–9. As to the timeframe, Deer Creek states the project can be completed within six months. Plaintiff has not challenged this timeline or provided any evidence to the contrary.

Aside from disputing who should bear the costs of the improvements, there is no evidence that the improvements could not be completed within Deer Creek's estimated timeline. This litigation has been ongoing since April 2018. By comparison, six months seems a reasonable amount of time in which to complete the work. Thus, the inquiry shifts to whether Deer Creek's intention that Garrett bear infrastructure costs precludes a finding that it has made service available under § 1926(b).

### d. Costs

Even if a provider has adequate facilities to provide service, "the cost of those services may be so excessive that it has not made those services 'available' under § 1926(b)." *Rural Water Dist. No. 1., Ellsworth Cnty., Kan. v. City of Wilson, Kan.*, 243 F.3d 1263, 1271 (10th Cir. 2001). "There is some point at which costs become so high that assessing them upon the user constitutes a practical deprivation of service." *Id.* To make service available, the rates must not be "'unreasonable, excessive, and confiscatory.'" *Id.*

(quoting *Bodine v. Osage Cnty. Rural Water Dist. No. 7*, 949 P.2d 1104, 1110 (Kan. 1997)). In analyzing this, courts have considered: "(1) whether the challenged practice allows the district to yield more than a fair profit; (2) whether the practice establishes a rate that is disproportionate to the services rendered; (3) whether other, similarly situated districts do not follow the practice; (4) whether the practice establishes an arbitrary classification between various users." *Ellsworth*, 243 F.3d at 1271. These factors should be assessed under the totality of the circumstances. *Id.*

Garrett claims the impact fees for drilling new wells is $1,275,000. This price is figured proportionately based on the cost to serve each new lot. Garrett asserts, however, that Deer Creek plans to charge $1,600,00.00 to drill the wells. This number includes only the drilling—not the costs of any unsuccessful wells, power costs, inspection fees, maintenance, or the value of the donated surface and water rights. Garrett claims that Deer Creek is attempting to charge $325,00.00 more than the proportionate impact. Further, Garrett states that the cases cited by Deer Creek related to costs deal with basic infrastructure improvements like extending a water line, not drilling wells.

Deer Creek argues Garrett's expert testified that the numbers do not yield more than a fair profit, confirmed it was proportional, and admitted that Garrett could develop the property profitably with the proposed costs. Deer Creek also argues that these costs did not prohibit Garrett from proceeding with the project as Garrett initially accepted the terms in 2015 without objection.

Costs must not be excessive, unreasonable, and confiscatory. Based on the evidence presented, the Court finds that there are genuine issues of material fact as to whether the

15

costs were excessive, unreasonable, and confiscatory, thereby making service unavailable to Plaintiff. Thus, summary judgment is precluded on this issue. *See Rural Water Dist. No. 5, Wagoner Cnty., Okla. v. City of Coweta*, 949 F. Supp. 2d at 1103 (finding genuine issues of material fact that precluded summary judgment).

## CONCLUSION

For these reasons, the Court finds that Plaintiff is not entitled to a determination as a matter of law that Deer Creek's loan from the USDA violates the Tenth Amendment, Deer Creek needs a defined service area, and Deer Creek's actions constitute a taking under the Fifth Amendment.

Further, the Court finds that Plaintiff is entitled to a determination as a matter of law that Defendant does not presently have the capacity to serve the Addition. Defendant is entitled to a determination as a matter of law that the necessary additions could be completed within a reasonable time. Summary judgment is not appropriate on any other issue addressed by the Motions.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 52] is **GRANTED** in part and **DENIED** in part as set forth herein. Further, Plaintiff's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part as set forth herein. Whether the costs associated with the improvements result in services not being made available to Plaintiff remains for trial.

**IT IS SO ORDERED** this 12th day of January, 2021.

TIMOTHY D. DeGIUSTI
Chief United States District Judge